**R.D. SMITH & COMPANY, INC., Randall D. Smith, Sega Associates, L.P., and Randall D. Smith as trustee of the R.D. Smith & Company, Inc. Retirement Plan, Plaintiffs,**

v.

**PREWAY INC., James W. Egan, Wallace H. Dunbar, Francis G. Walker, Tom S. Ellis, Richard E. Johnson, D. Barry Reardon, Lawrence H. Boling, Harold E. Clark, Jr., and William Thomas, Jr., Defendants.**

**No. 86–C–641–C.**

United States District Court, W.D. Wisconsin.

Sept. 26, 1986.

Donald K. Schott and Jeffrey B. Bartell, Quarles & Brady, Madison, Wis., for plaintiffs.

Richard Ninneman, Whyte & Hirschboeck, Milwaukee, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

This diversity action is before the court on the plaintiffs' motion for a preliminary injunction of both an offer made by defendant Preway, Inc. to exchange non-convertible debentures for new notes and a shareholder rights plan (referred to by plaintiffs as a "poison pill plan") adopted by Preway. Plaintiffs contend that the directors of Preway breached their fiduciary duties to the company's shareholders by adopting the debenture exchange plan and the shareholder rights plan, and that the shareholder rights plan violates the Wisconsin Business Corporation Law, Wis.Stat. § 180.12. After a hearing on September 16, 1986, I denied the plaintiffs' motion for a preliminary injunction as it related to the exchange plan and reserved judgment on the motion for a preliminary injunction as it related to the shareholder rights plan. This order relates only to the motion to enjoin the shareholder

rights plan. From the uncontested proposed findings of fact submitted by plaintiffs and from additional materials submitted by the parties, I make the following findings of fact, solely for the purpose of deciding this motion.

## FACTS

Plaintiff R.D. Smith & Company is a broker-dealer registered with the Securities and Exchange Commission, and is a corporation organized under New York law and doing business in New York City. Plaintiff SEGA Associates, L.P., is a New Jersey limited partnership engaged in the investment business and having its principal executive offices in Morristown, New Jersey.[1] Plaintiff Randall D. Smith is a resident of New Jersey. Smith is the sole shareholder and Chairman of R.D. Smith & Company, and is a general partner of SEGA Associates. Smith is also a participant in and the sole trustee of the R.D. Smith & Company Retirement Plan, which is the retirement plan for employees of R.D. Smith & Company and is a trust governed by the laws of the state of New York and subject to the Employee Retirement Income Security Act of 1974.

Defendant Preway, Inc. is a corporation organized under Wisconsin law with its principal place of business in Wisconsin Rapids, Wisconsin. Defendant Egan is a director of Preway and its Chairman of the Board and Chief Executive Officer. Defendant Ellis is a director of Preway and its Secretary and Treasurer. The other individual defendants are all members of Preway's Board of Directors. The individual defendants are all citizens of states other than New York and New Jersey.

Preway's common stock is publicly held, is traded on the over-the-counter market, and is regularly quoted on NASDAQ. All

---

1. For purposes of diversity jurisdiction, partnerships are citizens of the states where their partners reside. *Stockman v. LaCroix,* 790 F.2d 584, 587 (7th Cir.1986). At present all that I know about the residences of the partners of SEGA is that one general partner, Randall D. Smith, is a New Jersey resident. During a discussion of

this question at the hearing, no one suggested that the partnership had any partners who were not residents of New Jersey or New York. For purposes of this motion I will assume that diversity is complete, but reserve the issue for future determination.

four of the plaintiffs own stock in Preway. Plaintiff R.D. Smith & Company owns 1,073,979 shares of Preway common stock, all purchased prior to August 13, 1986. Plaintiff SEGA Associates owns 35,000 shares of Preway common stock, all purchased on or about June 13, 1986. Plaintiff Randall D. Smith, as trustee of the R.D. Smith & Company Retirement Plan, owns 15,000 shares of Preway common stock, all purchased on or about June 13, 1986. Finally, plaintiff Randall D. Smith has shared voting power over and may be deemed the beneficial owner of the common stock owned directly by R.D. Smith & Company, SEGA Associates, and the Retirement Plan.

At the annual shareholders' meeting on June 3, 1986, Preway's management proposed amendments to its Articles of Incorporation to authorize an increase in the number of authorized shares of common stock from 10 million to 40 million shares, and a simultaneous reduction in the par value of each share of common stock from $.50 to $.10. In recommending these amendments to the shareholders, management stated that it was running short of authorized shares and needed additional shares in order to continue Preway's policy of making debenture payments in the form of shares of common stock, and in order "to have additional shares available for possible acquisitions, employee benefit and incentive plans and other general corporate purposes." These amendments were passed. As of June 30, 1986, the amount of common stock outstanding totalled 7.2 million shares.

On or about July 8, 1986, plaintiffs and others filed a schedule 13G statement with the Securities and Exchange Commission. A copy of the schedule was also delivered to Preway. The schedule disclosed that the filing group collectively owned 924,479 shares of common stock, which constituted approximately 15% of the 5,860,478 shares of Preway outstanding as of March 31, 1986. At the time of the filing of the schedule 13G, Randall Smith and James Rubin, an analyst then employed by R.D.

Smith & Company, both telephoned defendant Egan on behalf of R.D. Smith & Co. to inform Egan that plaintiffs had no intention of influencing the control of Preway. Smith suggested a meeting with Egan, who promised to call and fix a date when he returned from a previously scheduled trip. However, between the filing of the schedule 13G and August 13, Smith did not hear again from Egan, although Smith telephoned Egan repeatedly to schedule the meeting they had discussed. Egan never returned Smith's calls.

Together with certain additional purchases made between July 8, 1986, and August 1, 1986, plaintiffs now own 1,123,979 shares of Preway common stock. This represents an investment of over $1,871,000 and constitutes the largest holding of common stock of Preway. No other person or entity beneficially owns 5% or more of Preway's common stock. All executive officers and directors as a group beneficially own an aggregate of 310,000 shares, or 4.2% of the common stock outstanding, as of July 31, 1986.

On learning of plaintiffs' filing of the schedule 13G, Egan contacted James Schneider of Drexel Burnham Lambert Incorporated, Preway's financial advisor. Schneider suggested that Egan consult with others at Drexel and with the law firm of Skadden, Arps, Slate, Meagher & Flom. By July 24, Drexel had produced a "term sheet" outlining the proposed debenture exchange and Skadden had assembled materials on a shareholder rights plan which, Skadden suggested, "could easily be adapted to fit the Preway situation." The debenture exchange and the shareholder rights plan were adopted by the Preway Board of Directors after meetings on August 7 and 13, 1986.

The shareholder rights plan is intended to make it difficult to acquire control of Preway. The plan consists of a dividend of one right for each outstanding share of stock. Each right entitles the holder to purchase one share of common stock at a

fixed exercise price.[2] The rights exist for ten years unless redeemed earlier by the company.

Initially the rights are transferred with the common stock. They do not become exercisable until ten days after the occurrence of a preliminary "triggering event." Preliminary triggering events are defined as either the announcement that a person or group (an "acquiring person") has acquired beneficial ownership of 25% or more of Preway's voting stock, or the commencement of a tender offer for 30% or more of the voting stock. The rights are then exercisable, unless the company decides to redeem them, which it can do at a price of $.05 per right at any time up to twenty days after the announcement of the triggering event.

It becomes more attractive to exercise these rights upon the occurrence of a secondary triggering event that brings into action the "flip-in" or "flip-over" provisions of the plan. The flip-in provision is triggered if (1) Preway is the surviving entity in a merger with a 25% or more shareholder, (2) a person becomes the beneficial owner of more than 30% of the voting shares, (3) a 25% or more shareholder engages in a "self dealing transaction" with the company as defined in the rights agreement, or (4) a 25% shareholder's ownership interest is increased by more than 1%. Upon the occurrence of one of these events, the rights of all shareholders except the 25% shareholder flip-in to an entitlement to purchase common stock of the company with a value equal to twice the exercise price of the right. The rights of the 25% shareholder become null and void. The desired effect of the flip-in provision is to dilute the voting rights and equity of the 25% shareholder.

The flip-over provision is triggered if Preway is acquired by or merged into another company, or if 50% of Preway's assets or earning power are sold while there is a 25% shareholder. Each right then flips over into a right to purchase shares of the acquiring company equal to twice the exercise price of the right.

## OPINION

In order to prevail on a motion for a preliminary injunction, the moving party must establish as a threshold matter that there is no adequate remedy at law, that there is a danger of irreparable harm, and that there is some likelihood of success on the merits. *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986). Once the movant has satisfied these threshold inquiries, "the district court must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Ibid.* The Court of Appeals for the Seventh Circuit has held that this balancing requires the district court to "compare the irreparable harm to the plaintiff if the injunction is denied, weighted by the likelihood that the denial would be erroneous because the plaintiff will prevail in the plenary trial, with the irreparable harm to the defendant if the injunction is granted, weighted by the likelihood that the grant would be erroneous because the defendant, not the plaintiff, will prevail in the trial." *Dynamics Corp. of America v. CTS Corp.*, 794 F.2d 250, 252 (7th Cir.1986).

1. Irreparable harm

Plaintiffs contend that they will be irreparably harmed in two main ways if an injunction of the shareholder rights plan is denied. First, they contend that since the announcement of the exchange offer and the rights plan, the value of shares of Preway common stock has dropped considerably. Second, they contend that the rights plan will prevent them from attempt-

---

**2.** The fixed exercise price is $6.75 per share, which is about 3 times the market price of Preway stock at the time the plan was adopted. The plaintiffs argue that the price was set high so that no rational shareholder would exercise his or her rights on the first triggering event. The defendants contend that the price was intended to approximate the perceived long term value of Preway.

ing to influence Preway management either through alliance with other Preway shareholders or through acquisition of additional shares of Preway stock.

Even if I assume for purposes of deciding this motion that Preway stock has declined in value because of the adoption of the shareholder rights plan, damages of this type would not require a preliminary injunction of the rights plan. It would be easy to calculate a decline in the value of a known number of shares of a publicly held corporation, traded in the over-the-counter market. Where damages can be measured, equitable relief is not required. *Tele-Controls, Inc. v. Ford Indus.*, 388 F.2d 48, 50 (7th Cir.1967). In *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386 (7th Cir.1984), the court of appeals noted some circumstances in which a damages remedy may not be appropriate, but none of these is present here. The damages would not be difficult to calculate; the plaintiffs are not likely to go out of business while waiting for this case to be decided (indeed, they do not seem to have had any difficulty financing this lawsuit); and finally, although Preway's financial condition has been shaky in the recent past, there is no reason to think that the defendants would be unable to pay a judgment against them. Accordingly, a decline in the value of Preway shares does not require an injunction against the shareholder rights plan.

The second source of irreparable injury mentioned by the plaintiffs is that the rights plan will prevent them from attempting to influence Preway management to save their investment. However, I am not able to make a finding as to exactly what actions plaintiffs wish to take that are hampered by the rights plan. In their brief, plaintiffs suggest that they may wish either to combine with other shareholders or to acquire additional shares of Preway, and in support of this have submitted a copy of a schedule 13D filed with the Securities and Exchange Commission on August 29, 1986 (Plaintiffs' exhibit no. 22). In the schedule 13D plaintiffs state that the reporting parties wish to influence Preway's Board of Directors and management, and describe their intentions as follows:

> The Reporting Persons do not presently intend to acquire additional Common Shares or to seek to acquire control of the Issuer or, except as set forth above, to influence control of the Issuer. However, the Reporting Persons intend continuously to review their investment in the Issuer, the Issuer's operations, assets, financial condition and prospects and management and depending upon the outcome of the litigation described above, the actions of the Issuer, the results of such continuing review, and other factors considered relevant by the Reporting Persons, one or more of the Reporting Persons may ultimately determine to acquire additional Common Shares or to seek to acquire a majority of the Common Shares or the entire equity interest in the Issuer by means of a tender offer, merger or other business combination or to acquire control of the Issuer through the solicitation of proxies or otherwise. Accordingly, the Reporting Persons expressly reserve the right to take such courses of action or any thereof should they determine to do so in the future.

Plaintiffs' exhibit 22, pp. 10–11. I find this statement of plaintiffs' future intentions regarding Preway ambiguous as to whether plaintiffs intend to try to influence Preway.[3]

On the present record I am unable to determine whether the plaintiffs intend to take action to influence Preway. Plaintiffs themselves do not seem to have determined with any certainty what they want to do. I conclude that plaintiffs have not shown that they will be irreparably harmed if the

---

3. In their brief, defendants state that Randall Smith testified at his deposition on September 9, 1986 that he has no present intention of effecting a change of control or influencing control over Preway. Although defendants cite to specific pages of Smith's deposition, they have not provided me with copies of these pages.

shareholder rights plan deters them from taking steps to influence Preway.

2. Likelihood of success on the merits

■ The irreparable harm to the plaintiffs if a preliminary injunction is denied must be weighted by the likelihood that the denial would be erroneous because the plaintiffs would prevail in the plenary trial. *Dynamics Corp.*, 794 F.2d at 252. Accordingly, I must consider whether plaintiffs are likely to prevail on the merits of their arguments that the shareholder rights plan violates Wisconsin law and that the plan was adopted in violation of the fiduciary duty owed by the individual defendants to Preway's shareholders.

■ Plaintiffs' claim that the shareholder rights plan violates Wisconsin law rests on the anti-discrimination provision of Wis. Stat. § 180.12(3). This statute provides in pertinent part that "All shares of the same class shall be identical ..."[4] Plaintiffs argue that the rights plan discriminates among shareholders in three distinct ways. First, plaintiffs argue that the plan discriminates between a shareholder or shareholders who come to constitute an "acquiring person" and other shareholders. This discrimination occurs when the flip-in provision of the rights plan is triggered and all shareholders except the acquiring person may exercise their rights to purchase additional shares. In contrast, the acquiring person loses his or her right to purchase additional shares. Second, the plan discriminates against acquiring persons by paying shareholders a "dividend" consisting of special rights that the acquiring persons is not able to exercise. Finally, the plan discriminates among different shareholders who may make tender offers because in any given situation the Preway board of directors can decide whether to redeem the shareholders' purchase rights.

Plaintiffs rely mainly on *Amalgamated Sugar v. NL Industries*, 644 F.Supp. 1229,

(S.D.N.Y.1986), in which the district court granted a preliminary injunction of a shareholder rights plan based upon New Jersey corporations law. I find *Amalgamated Sugar* helpful authority; the rights plan at issue in that case is similar to Preway's, and New Jersey law is similar to Wisconsin's. Defendants point to the fact that the district court did not follow a number of Delaware decisions, but in my view, the court adequately distinguished those cases based on the provisions of the rights plan before it. Defendants argue also that Wisconsin law differs from New Jersey's, in that Wis. Stat. § 180.25(9) expresses a Wisconsin legislative decision to allow discrimination among shareholders of the same class of the sort held impermissible in *Amalgamated Sugar*. I disagree, for reasons I will discuss more fully later in this opinion. Finally, the defendants attempt to distinguish *Amalgamated Sugar* factually because the rights plan in that case had already been triggered, while the plan here has not been and is not in imminent risk of being triggered. I agree that this is an important distinction, but one that goes to the lack of irreparable harm shown by the plaintiffs here, rather than to the issue of the legality of the rights plan under Wisconsin law.

The rights plan in *Amalgamated Sugar* contained provisions substantially similar to those of Preway's plan. It was enjoined mainly because of a flip-in provision which, like the flip-in provision of Preway's plan, had the effect of diluting an acquiring person's equity and voting rights upon the occurrence of two triggering events. The district court held the rights plan, and the flip-in provision in particular, *ultra vires* as a matter of New Jersey Business Corporation law.

The New Jersey law on which the district court relied, section 14A: 7–1 and 7–2 of the New Jersey Business Corporation Act,

---

**4.** Wis.Stat. § 180.12(3) goes on to provide, " ... except as to the following relative rights and preferences, as to which there may be variations between different series ...". However, since Preway has only one class of common stock, not divided into series, this part of the statute is not applicable.

848

permits differences in voting rights between classes or series of stock, but does not allow discrimination among shareholders of the same class and series. Thus, it is similar to Wis.Stat. § 180.12. The defendants in *Amalgamated Sugar*, like defendants here, argued that they were authorized to issue the discriminatory rights because of statutes authorizing corporations to issue rights to purchase shares of stock from the corporation.[5] I find this argument no more persuasive than did the district judge in *Amalgamated Sugar*, who stated:

> I do not accept such a broad reading of 14A:7-7. Such a reading would allow the boards of directors of corporations to circumvent the provisions of 14A:7-1 [the anti-discrimination provision]. It is axiomatic that one cannot read a statute to accomplish an end that is impermissible under another section of the statute.

644 F.Supp. at 1236. In addition to holding that the flip-in provision effected a discrimination among shareholders, the district judge expressed concern that issuance of the rights in the form of a dividend was a separate source of unlawful discrimination against a 20% or more shareholder. This concern applies as well to the Preway plan.

Defendants make a number of additional arguments why the Preway rights plan is valid under Wisconsin law. First, they argue that a rights plan substantially similar to the Preway plan was held valid under

Wisconsin law in *APL Corp. v. Johnson Controls*, No. 85 Civ. 990, slip op. (E.D. N.Y. March 25, 1985). However, I am not convinced that *APL* is helpful authority. In *APL*, the district court did not describe the *Johnson Controls* rights plan in sufficient detail to allow a determination whether it was similar to Preway's plan. In particular, it is not clear whether the rights plan in *APL* had the same discriminatory effect that the Preway plan has. Also, it appears that the district court looked at Wisconsin law only to determine whether a merger agreement was valid, not to determine whether the rights plan was valid. The challenge to the validity of the rights plan was made under "basic principles of state corporation law," rather than specifically under Wisconsin law. Even if the district court was construing Wisconsin law in denying the motion for a preliminary injunction of the rights plan, the court's reasoning on this point is set forth in a brief and conclusory fashion, and I find it less persuasive than the carefully reasoned opinion in *Amalgamated Sugar*.

Defendants argue next that the Wisconsin legislature has recently indicated its support of corporate methods like rights plans intended to prevent unfair and abusive takeover tactics by enacting Wis.Stat. § 180.25(9). § 180.25(9)(a) provides that under some circumstances the voting power of a 20% or more shareholder can be limited to 10% of the voting power of his or her shares.[6] I do not find in § 180.25(9) a

---

**5.** The defendants in *Amalgamated Sugar* argued that section 14A:7-7 of the New Jersey Business Corporation Law, which authorizes corporations to issue rights to purchase shares of stock from the corporation "for such consideration, and upon such terms and conditions as may be fixed by the board," permitted them to issue such rights with discriminatory conditions. Similarly, the Preway defendants argue that Wis.Stat. § 180.55, which also authorizes corporations to issue rights to purchase shares of stock from the corporation, authorizes them to issue the rights in question here.

**6.** In pertinent part, Wis.Stat. § 180.25(a) provides:

(9)(a) Unless otherwise provided in the articles of incorporation of an issuing public cor-

poration and except as provided in par. (b) or as restored under par. (d), the voting power of shares of an issuing public corporation held by any person, including shares issuable upon conversion of convertible securities or upon exercise of options or warrants, in excess of 20% of the voting power in the election of directors shall be limited to 10% of the full voting power of those shares. In this subsection, "person" includes 2 or more individuals or persons acting as a group for the purpose of acquiring or holding securities of an issuing public corporation, but does not include a bank, broker, nominee, trustee or other person that acquires or holds shares in the ordinary course of business for others in good faith and not for the purpose of avoiding this subsection unless the person may exercise or direct the exercise of votes with respect to the

broad statement in favor of discrimination among shareholders as an anti-takeover policy. Defendants make no reference in their brief to subsection (b) of § 180.25(9), which provides a number of exceptions to (9)(a), some of which may be applicable in this case. It is not necessary to construe § 180.25(9), since at present I need only to estimate the likelihood that plaintiffs will succeed on the merits of their claim. However, even if I were to decide that § 180.-25(9) applies to the plaintiffs in this case, it is not clear that it would authorize the Preway rights plan, which goes beyond § 180.25(9) by eliminating entirely the rights of an acquiring person granted under the plan. Therefore, I conclude that § 180.25(9) does not appreciably lessen plaintiffs' likelihood of success on the merits.

Defendants' remaining arguments concerning the legality of the rights plan under § 180.12 are not persuasive. Defendants argue that § 180.12 is addressed to authorized restrictions on stock and does not extend to the issuance of rights. Since one right is to be issued for each outstanding share of stock, to be exercised by the holder of that share of stock (provided he or she is not an acquiring person), the rights are intimately connected with the equality (or lack of equality) among the shareholders. The defendants argue also that the rights plan creates discrimination among shareholders rather than shares of stock, and that § 180.12 is aimed only at

discrimination among shares of stock. I have difficulty following this argument, and even more difficulty imagining that the legislature would have limited its concern to the treatment of stock rather than the treatment of shareholders.

I conclude that plaintiffs have a good chance of succeeding on the merits of their claim that Preway's rights plan violates the Wisconsin Business Corporation Law.

In addition to attacking the legality of the rights plan under Wis.Stat. § 180.12(3), plaintiffs argue that adoption of the plan by Preway's board of directors was a breach of the fiduciary duties owed by the board to the company's shareholders. This issue requires examination of the process by which the directors adopted the rights plan. For purposes of deciding this motion, I assume that plaintiffs will be able to prove at trial the following facts that they allege as a basis for the claim.

Plaintiffs contend that the defendants had no reason to believe that the plaintiffs' investment in Preway posed a threat to control of the company. Plaintiffs allege that they wished to avoid taking Preway management by surprise and having their intentions misconstrued as being hostile, and that therefore Randall Smith and Jim Rubin of R.D. Smith & Company each telephoned defendant Egan to assure him that the plaintiffs did not intend to seek control of Preway. Instead of being reassured, Egan immediately contacted Drexel and

shares at a meeting of shareholders without further instruction from another.

(b) Shares of an issuing public corporation held, acquired or to be acquired in any of the following circumstances are excluded from the application of this subsection:

1. Shares acquired before April 22, 1986.
2. Shares acquired under an agreement entered into before April 22, 1986.
3. Shares acquired by a donee under an inter vivos gift not made to avoid this subsection or by a distributee as defined in s. 851.07.
4. Shares acquired under a collateral pledge or security agreement, or similar instrument, not created to avoid this subsection.
5. Shares acquired under s. 180.62, 180.63, 180.68 or 180.685 if the issuing public corporation is a party to the merger or consolidation.

6. Shares acquired from the issuing public corporation.
7. Shares acquired under an agreement entered into at a time when the issuing public corporation was not an issuing public corporation.
8. Shares acquired of the capital stock of a state bank or trust company if the acquisition is subject to a shareholder vote under s. 180.-04(6).
9. Shares acquired in a transaction incident to which the shareholders of the issuing public corporation have voted under par. (d) to approve the person's resolution delivered under par. (c) to restore the full voting power of all of that person's shares.

Skadden and began planning to take defensive measure, including the formulation of the rights plan.

Plaintiffs also challenge the adequacy of the Preway board's consideration of the rights plan. Plaintiffs allege that the directors were first informed by Egan that the rights plan would be discussed at their August 7th meeting by a letter of July 29th. Representatives of Drexel and Skadden were present at the August 7th meeting to explain the rights plan to the board. Plaintiffs allege that the rights plan was presented to the directors as a finished product, rather than as one alternative for them to consider in deciding how to deal with the perceived threat. Plaintiffs allege that consideration of the rights plan was spread over two meetings (August 7th and 13th) only as a sham, "to bolster a claim of business judgment for any subsequent litigation." Plaintiffs characterize the separate August 13th meeting of the independent directors as "a ceremonial 5–10 minute meeting ... held to avoid the 'perception' 'that the directors were taking this action in a self serving manner,'" after which the directors voted for adoption of the rights plan.

Wisconsin courts do not seem to have considered the standard of care by which the actions of a board of directors adopting a shareholder rights plan shall be judged. However, I have guidance from recent decisions of the United States District Court for the Northern District of Illinois and the Court of Appeals for the Seventh Circuit in *Dynamics Corp. of America v. CTS Corp.*, and in particular the district court's opinion of May 3, 1986, reported in Fed.Sec.L.Rep. (CCH) ¶ 92,743 [Available on WESTLAW, DCTU database], and the Seventh Circuit opinion of May 28, 1986, reported at 794 F.2d 250. *Dynamics* arose under Indiana law, but was decided based on principles of Delaware law since " ... Indiana takes its cues in matters of corporation law from the Delaware courts, which are more experienced in such matters since such a large fraction of major corporations is incorporated in Delaware and such a small fraction in Indiana." 794 F.2d at 253. Given the lack of Wisconsin law on point, seeking guidance from the decisions of other jurisdictions is also appropriate here.

*Dynamics* is particularly helpful authority because it involves two different rights plans. The first rights plan was enjoined preliminarily by the district court on April 17, 1986, the district court's injunction was upheld by the Court of Appeals for the Seventh Circuit in its May 28 decision. The *Dynamics* defendants then adopted another rights plan, using the district court's April 17 order as a guide. This second rights plan was upheld in the district court's May 3rd order denying the plaintiff's motion for a preliminary injunction of the second plan. Taken together, the opinions in *Dynamics* help delineate the essential factors of a permissible rights plan.

In *Dynamics* the district court summarized the legal standard governing a corporate board of directors which adopts defensive mechanisms in response to a takeover threat as follows:

> ... the directors are under an initial burden to show that they exercised good faith and reasonable investigation in determining whether a danger to corporate policy exists, and to show that the defensive mechanism was reasonable in relation to the threat posed. Once the directors satisfy this burden, however, their actions are entitled to the presumptions of the business judgment rule, and a shareholder who challenges their actions must show that the primary purpose of the defensive mechanism was entrenchment.

Fed.Sec.L.Rep. at 93,618. The district court found that the second rights plan adopted by the defendants in *Dynamics* satisfied the standard of good faith and reasonable investigation. The district court found particularly important certain of the steps defendants took after the initial order enjoining the first rights plan. The directors appointed a special committee of outside directors to analyze the situation in order to minimize the conflict of interest inherent in a board of directors' adoption of

defensive measures. This committee obtained separate counsel.[7] The board required further investment and legal advice before taking any firm actions. The directors studied the district court's earlier decision carefully in an attempt to avoid constructing a plan that would interfere with an ongoing proxy context and partial tender offer. The special committee concluded that shareholders other than the plaintiff would be likely to maximize the value of their shares if the company was sold and if the minority shareholders were protected by a carefully tailored rights plan. Finally, the rights plan did not insulate management from all hostile offers, since the rights issued under the plan expressly expired upon tender of a sufficiently high offer. Based on these facts, the district court denied the motion to enjoin the second rights plan.

The defendants in this case have not made as good a showing of good faith and reasonable investigation. It may be that a special committee of the outside directors of Preway with separate counsel is not essential, since seven of the nine Preway directors are outside directors. But it is necessary that the board have considered carefully the threat that they were faced with and the appropriate response. If plaintiffs are able to prove their allegations that the board's consideration of alternatives was merely perfunctory, this would mean that defendants did not meet their duty of good faith and reasonable investigation.

The defendants also have the burden of showing that the rights plan was a reasonable response in relation to the threat posed. This means that they must show not only that they had a reasonable basis for perceiving a threat to the company's shareholders, but also that the plan they adopted was a reasonable response to that threat. Plaintiffs have argued that the defendants' only basis for perceiving a threat was the telephone calls from Smith

and Rubin stating that they were not going to try to take control of the company. Defendants argue that they had reason to believe that Preway's common stock was substantially undervalued in the market, and that consequently the company was vulnerable to corporate raiders. Defendants contend that after plaintiffs filed their schedule 13G Preway began to seek defensive strategies, and that it was explained to the directors at their August 7 meeting that plaintiffs' block of Preway stock posed a threat to Preway shareholders regardless of plaintiffs' intentions because the block could be sold to someone who was interested in attempting to gain control of Preway. I am not able to determine on this record whether the directors had a reasonable basis for perceiving a threat to Preway.

It is not clear to me at this point how restrictive the Preway rights plan is of actions that might be taken to influence the management or to take over the company. This issue is important, because it is clear that a rights plan cannot be so restrictive as to preclude any possibility of a hostile takeover. 794 F.2d at 259. At the September 16 hearing on the motion for a preliminary injunction, counsel discussed the question whether the Preway rights plan would be triggered by a group of shareholders whose aggregate holdings were 25% or more of the outstanding shares getting together for proxy purposes, and they have expanded on that discussion in correspondence received since then. Plaintiffs contend that such an event would trigger the rights plan. Defendants contend that it would not. Since it appears that reasonable people can differ about whether the Preway plan would be triggered by shareholders organizing together for a proxy contest, it seems possible that the plan could deter all such contests and that it may therefore be overbroad.

Since it is not clear that defendants have met the standard of good faith and reason-

---

**7.** I note that the outside directors' committee had as counsel the firm of Skadden, Arps, Slate,

Meagher & Flom.

able investigation in adopting the rights plan, or that the plan was a reasonable response to the threat, I find that plaintiffs have a good chance of succeeding on their claim that the directors violated their fiduciary duties to the shareholders.

I conclude that plaintiffs are likely to succeed on both of their claims relating to the shareholder rights plan. However, since plaintiffs have not shown that they will suffer irreparable harm if their motion for an injunction of the rights plan is denied, the plaintiffs' side of the scale does not weigh heavily. Against the plaintiffs' side I must balance the irreparable harm to the defendants if the injunction is granted, weighted by the likelihood that the grant would be erroneous because the defendants will prevail at trial.

The defendants argue that the balance of hardships tips in their favor because of "the significance of the protection afforded Preway stockholders by the Rights Plan." This argument is inconsistent with the defendants' argument that plaintiffs have not shown irreparable harm if the injunction is denied because neither plaintiffs nor any other known person intends to try to take control of Preway. If in fact as defendants state "there is no acquirer to be deterred," then the protection of the rights plan is unnecessary and a preliminary injunction of it would not harm defendants irreparably. Since I have found that plaintiffs are likely to prevail on the merits of their arguments, this factor does not add any weight to defendants' side.

Although plaintiffs may ultimately succeed on the merits, the lack of any irreparable harm to them if their motion for a preliminary injunction is denied convinces me that equitable relief at this stage is unnecessary.

### ORDER

IT IS ORDERED that plaintiffs' motion for a preliminary injunction of the Preway shareholder rights plan is DENIED.